STATE of Indiana, Appellant
(Plaintiff below),

v.

Hubert McMILLAN, Appellee
(Defendant below).

STATE of Indiana, Appellant
(Plaintiff below),

v.

Harry E. FERGUSON, Appellee
(Defendant below).

STATE of Indiana, Appellant
(Plaintiff below),

v.

Albert Lee WOODS, Appellee
(Defendant below).

Nos. 680S167, 680S164 and 680S165.

Supreme Court of Indiana.

Sept. 23, 1980.

Rehearing Denied Dec. 2, 1980.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Asst. Atty. Gen., Indianapolis, for appellant.

Kenneth C. Kern, Kenneth C. Kern & Associates, Indianapolis, for appellee McMillan.

Perry H. Harrold, Indianapolis, for appellee Ferguson.

Sandy L. Bryant, Indianapolis, for appellee Woods.

HUNTER, Justice.

These three appeals arise from separate dispositions in the trial courts below. Because they involve substantially the same questions, they have been consolidated for purposes of briefing and consideration by this Court. Defendant Hubert McMillan was convicted by a jury of burglary, a class C felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.). Defendant Albert Lee Woods was also convicted by a jury of burglary, a class C felony. Defendant Harry E. Ferguson was convicted by a jury of robbery, a class C felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.).

In each instance, the state attempted to have the defendants sentenced as habitual criminals pursuant to Ind.Code § 35–50–2–8 (Burns 1979 Repl.) (amended 1980). However, after the evidence had been presented in the second stage of the bifurcated proceeding, the jury advised the trial court that it could not reach a verdict. Each trial court declared a mistrial and discharged the jury. The state's motions for a new trial setting were denied, and the habitual offender allegations were dismissed. McMillan was sentenced to five years' imprisonment on his burglary conviction. The state appealed the trial court's ruling on its motion for a new trial setting and the dismissal of the habitual offender charge directly to the Court of Appeals. In the cases of Ferguson and Woods, neither defendant was sentenced for the underlying crimes. The trial courts certified their orders of dismissal and denial of the motion for a new trial setting pursuant to Ind.R.Ap.P. 4(B)(5) and suspended enforcement of the orders pending appeal. The state then initiated interlocutory appeals to the Court of Appeals which stayed the sentencing of defendants until their cases could be decided. By virtue of Ind.R.Ap.P. 4(A)(10), all three appeals were transferred to this Court where they were consolidated. In each case, two issues are submitted for our review:

1. Whether the state is authorized to appeal the trial courts' rulings; and

2. Whether the state is entitled to a new jury for retrial on the habitual offender charge alone when a mistrial has been declared in that phase of the bifurcated proceeding for the reason that the original jury was unable to agree on a verdict.

I.

Each defendant–appellee has filed a motion to dismiss the state's appeal. Defendant McMillan supports his motion on three grounds. First, he contends that none of the statutory provisions governing the state's right to appeal criminal cases, Ind. Code § 35–1–47–2 (Burns 1979 Repl.), is applicable in this instance. That statute provides:

"Appeals to the Supreme Court may be taken by the state in the following cases:

"First. From a judgment for the defendant, on quashing or setting aside an indictment or information, or sustaining a plea in abatement.

"Second. From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.

"Third. From a judgment of the court arresting judgment.

"Fourth. Upon a question reserved by the state."

When the state moved for a new trial setting following the jury's inability to reach a decision, McMillan filed a memorandum in opposition thereto in which it was asserted that he would be "put in jeopardy twice for the same offense" should the mo-

tion be granted. The trial court then denied the state's motion the same day. We think this is sufficient to invoke the second clause of Ind.Code § 35–1–47–2 (Burns 1979 Repl.) which permits the state to appeal orders for a defendant upon his plea of former jeopardy.

█ Next, McMillan argues that the appeal should be dismissed because the state's brief does not include a verbatim statement of the judgment as required by Ind.R.Ap.P. 8.3(A)(4). McMillan is in error. On page two of the state's brief, the trial court's order, which denied the state's motion for a new trial setting and dismissed the habitual offender charge, is quoted in full. That order is the basis for this appeal. McMillan's argument is, therefore, without merit.

█ McMillan's third and last ground for dismissal is that the state has no standing to file a motion to correct errors for the purpose of initiating a criminal appeal. He cites Ind.R.Crim.P. 16 which provides in pertinent part:

"In all criminal cases the *defendant* shall have sixty [60] days from the date of sentencing to file motion to correct errors." [Emphasis added.]

We have already held that the state has the requisite statutory authorization to bring this appeal. It would be anomalous for us

to dismiss it for the reason suggested by defendant. While the statute and our court rules may be silent on the matter, the filing of a motion to correct errors is clearly the logical procedure to commence the state's appeal, and we hold that it was proper for the state to do so. McMillan's motion to dismiss is hereby denied.

█ In support of their motions to dismiss, appellees Woods and Ferguson both contend that Ind.Code § 35–1–47–2 (Burns 1979 Repl.) does not authorize the state to appeal the interlocutory rulings in their cases. The state concedes that none of the statute's provisions is applicable. Instead, it contends that Ind.R.Ap.P. 4(B)(5)(b) allows it to appeal interlocutory orders in criminal proceedings.[1] We must disagree with the state.

In *State v. Sierp*, (1973) 260 Ind. 57, 292 N.E.2d 245, the state attempted to appeal a trial court order granting defendant's motion for a mistrial and discharge with prejudice by reason of misconduct on the part of the prosecutor. Finding the state unable to appeal under Ind.Code § 35–1–47–2 (Burns 1979 Repl.), we noted:

"The state vigorously disputes that we are without jurisdiction to determine this appeal, contending that our jurisdiction to hear appeals is not dependent upon

1. The rule provides:
"In all other cases, appeals shall be taken to the Court of Appeals, notwithstanding any law, statute or rule providing for direct appeal to the Supreme Court of Indiana. Also, appeal from interlocutory orders shall be taken to the Court of Appeals in the following cases:
"(1) For the payment of money or to compel the execution of any instrument of writing, or the delivery or assignment of any securities, evidence of debt, documents or things in action;
"(2) For the delivery of the possession of real property or the sale thereof;
"(3) Granting, or refusing to grant, or dissolving or overruling motions to dissolve preliminary injunctions; or the appointment of receivers;
"(4) Orders and judgments upon writs of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;
"(5) Any other interlocutory order, if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

"(a) The appellant will suffer substantial expense, damage or injury if the order is erroneous and the determination thereof is withheld until after judgment, or
"(b) The order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case, or
"(c) The remedy by appeal after judgment is otherwise inadequate. The petition for an appeal under subsection (5) of subdivision (B) of this rule shall not stay proceedings in the trial court unless the trial court judge or the court on appeal or a judge thereof shall so order, and such order may be made conditional upon the furnishing of a bond or security protecting the appellee against loss incurred thereby, if any.
"Any law, statute or rule or part thereof in conflict with the provisions set forth hereinabove are superseded by these rules, and the portions in conflict with these rules are hereby held vacated, set aside and held for naught."

legislative authorization. In this regard, it appears that both parties hereto have failed to distinguish between the authority of this Court to hear appeals and that of the state to prosecute them. True, the right of this Court to hear appeals is not dependent upon legislative enactment. *Bozovichar v. State* (1951), 230 Ind. 358, 103 N.E.2d 680; *Warren v. Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399. But, as we have hereinbefore demonstrated, the right of the state to prosecute criminal appeals is so dependent.

" 'Generally speaking, under the common law as understood and administered in this country, the state or United States had no right to an appeal or writ of error in criminal cases. It is apprehended that the reason for such a policy was built on the idea that, when the state in its sovereign capacity brought a citizen into its own tribunals, before its own officers, and in obedience to its own processes, and lost, its avenging hand should be stayed except in unusual cases where the power to appeal was expressly conferred.' 92 A.L.R. 1137." *Id.* at 60, 292 N.E.2d at 246.

*See also State v. Holland,* (1980) Ind., 403 N.E.2d 832.

This Court has adopted Ind.R.Ap.P. 4(A) and 4(B) pursuant to its rule making power as found in the Indiana Constitution. Ind. Const. art. 7, §§ 4, 6. These rules define the jurisdiction of the two appellate courts but say nothing about the state's right to prosecute a criminal appeal. More importantly, we can find no legislative authorization for the state's use of Appellate Rule 4(B)(5).[2]

In only one case have we permitted a criminal appeal by the state though not expressly authorized by Ind.Code § 35–1–47–2 (Burns 1979 Repl.)[3] In *State v. Palm-*

er, (1979) Ind., 386 N.E.2d 946, the trial court, believing a statute to be unconstitutional, suspended a sentence contrary to the requirements of the law. We noted that we would have jurisdiction over the case pursuant to Ind.R.Ap.P. 4(A)(8) but proceeded with our analysis in order to find a basis for the state's right to appeal. We held that since the state could have invoked our jurisdiction had it filed an original action for a writ of mandate, we would hear the direct appeal.

■ As the second part of this opinion will demonstrate, the substantive issue before us is one of first impression in this state. Therefore, the state could not have sought a writ of mandate in this Court because such an action only lies when there is a clear legal duty to act and the lower court has failed to perform that duty. *State ex rel. Marcrum v. Marion County Superior Court,* (1980) Ind., 403 N.E.2d 806; *State ex rel. Burns v. Sharp,* (1979) Ind., 393 N.E.2d 127. The action cannot be used to adjudicate and establish a right or define and impose a duty. *State ex rel. Socony Mobil Oil Co. v. Delaware Circuit Court,* (1964) 245 Ind. 154, 196 N.E.2d 752; *State ex rel. Hunter v. Winterrowd,* (1910) 174 Ind. 592, 91 N.E. 956. Thus, *Palmer* is of no help to the state.

If the state should be allowed to appeal interlocutory orders in criminal trials, the necessary authorization should come from the legislature. The legislative branch has taken action before to expand the state's right to appeal following judicial interpretation of the relevant statute. In *State v. Huebner,* (1954) 233 Ind. 566, 122 N.E.2d 88, and *State v. Gardner,* (1954) 233 Ind. 557, 122 N.E.2d 77, this Court held that under the predecessor to Ind.Code § 35–1–47–2 (Burns 1979 Repl.), the state could not appeal from a judgment discharging a defendant for delay in bringing him to trial. The

---

**2.** The state's citation to *State v. McCormick,* (1979) Ind., 397 N.E.2d 276, is not persuasive inasmuch as the issue of the state's right to appeal was never raised or decided.

**3.** In *State v. Lawson,* (1980) Ind., 400 N.E.2d 128, we also allowed the state to appeal al-

though none of the statutory provisions was applicable. However, we characterized the proceeding as an appeal from a hearing for post–conviction relief, not an appeal from a criminal trial. As we pointed out, such appeals are authorized by Ind.R.P.C. 1, § 7.

legislature responded by enacting the second clause in the current statute. Ch. 355, § 1, 1955 Ind.Acts 968. The state's attempted appeals under Rule 4(B)(5) should be dismissed.

## II.

We now turn to consideration of the substantive issue raised in the state's appeal in McMillan's case. McMillan argues that the question of guilt on the underlying felony and the question of sentencing as an habitual criminal in a proceeding brought pursuant to Ind.Code § 35–50–2–8 (Burns 1979 Repl.) (amended 1980) are nonseverable and thus cannot be determined separately by different finders of fact. He notes that the habitual criminal statute does not establish a separate crime but merely prescribes a procedure for imposition of a greater sentence for the crime charged. The state, on the other hand, maintains that the bifurcated nature of the proceeding clearly demonstrates the severability of the issues so that having a retrial on the habitual offender question alone can easily be accomplished. We agree with the state.

 It is true that the statute provides that if the defendant is convicted of the underlying felony in a jury trial, "the jury shall reconvene for the sentencing hearing." The statute thus mandates that the same jury must initially decide the habitual offender question, but it does not preclude a different jury from determining the issue should the first jury fail to reach an agreement. The statute is silent on that point, and there is no case law in this state on the subject. Researching the law in other jurisdictions reveals a similar lack of authority.

However, in *State v. Zeimer*, (1960) 10 Utah 2d 45, 347 P.2d 1111, the Supreme Court of Utah was faced with a factual situation very close to the one at bar. There, the jury found the defendant guilty of second–degree burglary, but the trial court declared a mistrial during the second part of the bifurcated proceeding addressed to defendant's status as an habitual crimi-

nal. The trial court ordered a new trial on the habitual offender question only, and a new jury decided the matter adversely to defendant. Defendant asserted on appeal that the court could not grant a new trial solely on the status issue, contending that the same jury which found him guilty of the underlying crime had to decide the status question also. The Utah statute required the defendant to be tried "forthwith by the same jury" in the second phase of the proceeding.

The Court in *Zeimer* first observed that other states allowed a new trial on remand limited to the question of status when error was discovered on appeal in that stage of the proceeding.[4] The Court noted the rationale for such a rule:

"The theory is that the procedure should be premised upon the accused's right to a fair trial, but should not be designed to produce legal loopholes. Since, in these jurisdictions, the trial on status occurs only after the trial of the substantive offense, the effect of the prejudicial error is limited to an easily severed issue of fact. Therefore, the new trial can fairly be limited to the question of status." *Id.* at 47–48, 347 P.2d at 1113.

In response to defendant's argument that he should either be granted a new trial for both the status and the charged crime or receive a dismissal of that part of the information alleging prior convictions, the Court stated:

"The court rejects appellant's argument because no good reason appears why the legislature would intend such a result. The statute recognizes that even though the allegation of being an habitual criminal be included in the information charging the substantive crime, the question of status should be presented to the jury only after it determines the guilt of the defendant. The rule keeps the proof of prior crimes from the jury until after it determines the issue of the substantive offense. This saves the accused from the prejudicial effect of proof that he has committed crimes in the past. The stat-

---

4. Annot., 79 A.L.R.2d 826 (1961).

ute also guarantees the accused a prompt and speedy trial on the issue of status. Since the statute severs the trial of status from the trial of the substantive offense, it negates any reason for why error in the trial of status can possibly prejudice the trial on the substantive offense. The policy of the State of Utah is to review alleged errors in criminal proceedings according to their prejudicial effect on the right of the accused to a fair trial. Viewed thus, the order granting a new trial solely on the issue of status and before a new jury is not error." *Id.* at 48, 347 P.2d at 1113–14 [footnotes omitted.]

We recognize that a contrary result was reached in *People v. Ysabel*, (1938) 28 Cal. App.2d 259, 82 P.2d 476. However, that case is distinguishable. The issues in that jurisdiction were not as clearly severable because there was no bifurcated proceeding. The habitual criminal question was to be determined as just another issue in the trial on the main offense. *Zeimer* is a much better precedent in light of that state's similarities with Indiana procedure.

As in *Zeimer*, a retrial here on the habitual offender question can be limited to an "easily severed issue of fact." The fact that habitual criminal status is not a separate crime does not change this result. The purpose behind the habitual offender statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies. *Ferguson v. State*, (1980) Ind., 405 N.E.2d 902; *Norris v. State*, (1979) Ind., 394 N.E.2d 144. It is in the public interest that the state be given another opportunity to secure an enhanced penalty should the first attempt result in a deadlocked jury. Nor is there any constitutional infirmity in this practice. The prohibition against double jeopardy does not prevent the state from seeking a new trial for the same crime when the initial trial ends with a hung jury. *Hinton v. State*, (1979) Ind., 397 N.E.2d 282; *Harlan v. State*, (1921) 190 Ind. 322, 130 N.E. 413. We hold that this constitutional guarantee presents no obstacle to a new trial on the severable question of habitual criminal status either.

The trial court's order in McMillan's case is reversed and the cause remanded with directions to grant the state's motion for a new trial setting on the habitual criminal determination.

Since the trial court has retained jurisdiction in the Woods and Ferguson cases for purposes of sentencing on the underlying convictions, we therefore remand their causes for further proceedings not inconsistent with the result in McMillan's case.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.