**Amy BOSTICK, Defendant–Appellant,**

**v.**

**STATE of Indiana, Plaintiff–Appellee.**

**No. 33S00–9911–CR–651.**

Supreme Court of Indiana.

Aug. 19, 2002.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

Following the death of her three children, ages one, two, and four, who were locked in their room during a house fire, the defendant, Amy Bostick, was charged with and convicted of three counts of murder and sentenced to life without parole for the three counts of murder. She was

also convicted on a charge of Arson, but the trial court did not sentence her on this count because of the Double Jeopardy Clause of the Indiana Constitution. Upon her additional conviction of sexual misconduct with a minor,[1] the defendant was given a concurrent sentence of fifteen years. In this direct appeal, the defendant raises three issues: (1) admission of her statements to law enforcement officers; (2) refusal of her tendered instruction on reckless homicide; and (3) imposing three sentences to life without parole as manifestly unreasonable.

## 1. Admission of Statements to Police

As her first argument, the defendant contends that the trial court erred by failing to exclude her July 28, 1998, statement to law enforcement officers on grounds that its probative value was substantially outweighed by its danger of unfair prejudice, confusion of issues, and of misleading the jury. In the course of making this argument, the defendant also claims that the exhibit contained interrogation that violated Ind.Evidence Rule 704(b), which prohibits a witness from testifying to opinions concerning guilt or innocence in a criminal case. The State argues that she has waived her challenges to the admission of this statement for failure to object at trial.

Four fire investigators testified that the fire that took the lives of the defendant's children was deliberately set by pouring and igniting flammable liquid in the closet of the children's bedroom and along the wall separating the bedroom from an adjacent room. As the fire consumed the children's bedroom, the children were locked inside. The doors to the house were also locked. The only other people in the house were the defendant and her teenaged boyfriend. The defendant woke the boyfriend after the fire started. The defendant gave five statements to law enforcement authorities regarding the fire: March 16th (the night of the fire) at 2:54 a.m. and 9:48 a.m., March 24th, July 24th and July 28th.

At trial, when exhibits consisting of the videotape and transcript of the final July 28 interview with the defendant were offered in evidence, the defendant objected, referring solely to "the reasons in the written motion filed with the Court and heard and determined by the Court previously." Record at 3515. The trial court overruled the defendant's objection, stating that it "will rule as it did before." *Id.*

Approximately six weeks earlier, the defendant had filed a motion to exclude evidence of her interview by police on July 28, 1998,[2] following her polygraph examination, and after she was advised that she had failed the examination. The defendant's motion acknowledged that her statements during the interview were knowingly and voluntarily given, but urged that the statement should be excluded because: (1) it was "objectionable and tainted" due to the repeated references to and/or inferences based upon the polygraph results; (2) it is irrelevant and violates Indiana Evidence Rule 401, and that "the probative value of said evidence is substantially outweighed by the danger of unfair prejudice;" and (3) even if redacted, the resulting statement "lacks evidentiary value other than accusation by the interro-

---

1. Ind.Code § 35–42–4–9. The defendant, age twenty-four, was charged with sexual intercourse with her fifteen-year-old boyfriend.

2. The text of her motion referred to her statement of "July 29, 1998," Record at 140, based on an incorrect date on the copy of the state-

ment provided by the prosecutor. The State clarified that the actual date was July 28, 1998, which the trial court noted and thereafter referred to the correct date. Record at 1308.

gators" and the defendant's repeated denial of memory regarding the incident and her "apparent acceptance of the polygraph results." Record at 141. Before ruling on the motion, the trial court heard further argument of counsel and twice reviewed the videotaped statement along with its transcription in two different formats. Record at 270. The trial court understood the defendant to claim that the probative value of the evidence in the statement was outweighed by the danger of unfair prejudice arising from the defendant's responses being directly affected by the polygraph results, and "the potential of confusion of issues could exist in that statement, *without reference to the polygraph,* could confuse the jury." Record at 271 (emphasis added). Concluding that it was not required to exclude a properly redacted statement, the trial court denied the defendant's motion to exclude the statement based on relevance and unfair prejudice, ordering forty-five redactions and corrections. Record at 272–79.

We acknowledge that, as to the redacted statement, the objections expressed in the defendant's motion were less than clear, and that her argument on appeal is slightly different from the one made in the trial proceedings. However, her motion did direct the trial court's attention to the requirement in Evid.R. 403 that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." And the trial court did express consideration of these issues when it ordered the redaction of numerous parts of the statement. Under the circumstances presented, we believe that the defendant's appellate claim was sufficiently presented to the trial court

to obviate the purpose of procedural default on this issue. Further, such grounds were preserved for appeal when the defendant made a contemporaneous objection at trial expressly referring to the arguments in her pre-trial motion. Record at 3515. The defendant's appellate claim that Ind. Evid.R. 704(b) [3] was violated, however, was not presented at trial or in the defendant's pre-trial motion to exclude that was referenced in her trial objection, and thus procedural default applies to prevent our consideration of this claim. *See Brown v. State,* 728 N.E.2d 876, 878 (Ind.2000).

■ With respect to her asserted violation of Ind.Evid.R. 403, the defendant now argues that any probative value of her July 1998 interview was substantially outweighed by the danger of unfair prejudice from allowing the jury to hear her interrogators "repeatedly assert their beliefs and opinions that there was absolutely no doubt that [the defendant] had set the fire that killed her children." Br. of Defendant–Appellant at 34.

This interview occurred immediately after the defendant had taken a polygraph examination and had been told that she had lied when asked whether she had set the fire. The defendant contends that the interrogating officers then used an "interrogation technique of telling [her] over-and-over again that they already knew that she did it, and that because they knew she did it, she did remember what she did and why she did it." Br. of Defendant Appellant at 29. Among the examples presented by the defendant's brief and appendix are the following:

> I want you to help me explain why this happened, why you did this. Not if you

---

**3.** Ind.Evid.R. 704(b) states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

did it Amy. Why you did it, cause that's what's important. [Record at 3519].

Amy, don't tell me you didn't do it. That's not a factor at this time, okay [Record at 3519].

Listen, Amy, everyone's gonna know that you did this and that's not a question, that is not a question we're here to discuss at this time. I can tell you absolutely without any, any reservation whatsoever that if you did it is not a question. [Record at 3519].

You know you set that fire and you know exactly how you set that fire. [Record at 3521].

Yeah, you do know you set it Amy. The only question is why you set it . . . [Record at 3522].

Don't give me I don't know Amy. You know as well as you know your name is Amy that you got up out of bed and set the fire. I want you to tell me how you did it [Record at 3523].

No, that's not the truth Amy. You know that you set that fire [Record at 3524].

We know the truth Amy and we know you did it [Record at 3526].

No, Amy, you set that fire. You know it and I know it [Record at 3527].

Oh I believe absolutely no doubt that you did it. That's not a question. The only question we have to explain to people is why [Record at 3528].

We know for a fact that Amy set the fire and I know what's going on in Amy's life [Record at 3540].

Okay, well we all know you did it . . . Okay, well I think we all know it, and I think you know it too [Record at 3573].

The interview does not contain any explicit admission of guilt by the defendant. Throughout the entire interview, despite the interrogators' insistence that she started the fire, the defendant maintained that she had no recollection of setting the fire

that killed her children. At one point, during her interrogators' inquires regarding *why* she committed the crime, the questioner asserted to her that "you did it, that you wanted to get rid of the kids, so you could have Jacob [her boyfriend]." Record at 3568. She replied, "I don't even remember doing it. But if there was a reason for me to do it, Jacob would not be the one." *Id.* A few questions later, responding to further questioning regarding *why*, the defendant said: "Fine. I can't remember if I did it or not, but one good reason why. Jason [her estranged husband]." Record at 3570. A few questions later, the questioner again asserted, "Okay, well we all know you did it" and asked, "Now the reason you just told us is what I want to make sure is the reason. Was that the reason? Was that the reason that you did it?" Record at 3573. The defendant responded:

> If that, if there was a reason, that would be it. Jason pushed me over my limit. I should have killed him is what I should have done. I should have killed Jason when I had the chance.

*Id.*

Despite extensive further intensive interrogation, the defendant consistently maintained that she did not remember setting the fire. For example, she stated: "And I know why, okay, but my problem is that I can't remember doing it, okay? And I don't want to sit here and admit that and say that I did do it, because I don't remember doing it, okay?" Record at 3580. Later, when asked to "admit the truth," she said: "Okay, so what you want me to do is sit here and say I killed my children because Jason pushed me over the edge." Record at 3583. When her interrogator replied: "Is that the truth?" she responded: "If I did kill my children then yes, that would be the truth." Record at 3583. She then stated:

I don't remember killing my children so I have to assume that everything else is right and that for some reason I just have a block in my head to where I can't see past that and so I did kill my children and Jason pushed me over the edge and I wish I would have killed that son of a bitch first before he did push me over the edge.

*Id.*

It is not surprising that, in ruling on the defendant's pre-trial motion to exclude the statement, the trial court stated:

The Court notes from reviewing the statement that the Defendant repeatedly indicates that she has no recollection of doing anything which would have started the fire that caused the deaths. The responses by the Defendant which might be characterized by the State as acknowledging guilt can be judged by the fact finders, along with the rest of the evidence, in determining whether she is truly acknowledging guilt or acquiescing in the conclusions of the questioners.

Record at 272.

■ The evaluation of whether the probative value of a particular item of evidence is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court. *Dunlap v. State*, 761 N.E.2d 837, 842 (Ind. 2002). In our view, the interrogators' accusations and the defendant's responses have little probative value in establishing her guilt. Likewise, we conclude that the repeated accusations, in the context of the entire statement, did not create a substantial risk of unfair prejudice. We are not persuaded that the trial court abused its discretion in admitting the redacted exhibits.

■ Before concluding Argument I in the Brief of Appellant Defendant, the defendant additionally claims that it was er-ror to admit, individually and collectively, four video and audio recordings and transcripts of her interrogations, including the one taken on July 28. Implicitly acknowledging that this claim was not presented to the trial court, she asserts that it constitutes fundamental error, thereby avoiding procedural default. To constitute fundamental error, the error " 'must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.' " *Etienne v. State*, 716 N.E.2d 457, 462 (Ind. 1999) (quoting *Wilson v. State*, 514 N.E.2d 282, 284 (Ind.1987)); *see also Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995)(defining fundamental error as error "so prejudicial to the rights of the defendant as to make a fair trial impossible").

The principal thrust of her claims with respect to the other statements is similar to the defendant's claim as to her July 28 statement, discussed and rejected above. She argues: "Each one of the interrogations is individually permeated with the same type of inadmissible statements of belief in Amy's guilt by the various interrogators that have been discussed in detail concerning the July 28 interrogation." Br. of Defendant Appellant at 41. The defendant highlights eleven portions of her statements that she contends are inadmissible hearsay. Considering the consistent and obvious use of the same interrogation technique, by challenging the defendant with assertions of her guilt, it is clear that the interrogators' utterances "were not assertions of fact, but more in the nature of statements designed to elicit a response." *Smith v. State*, 721 N.E.2d 213, 216 (Ind. 1999).

Regardless whether each statement is considered individually or whether all the statements are considered collectively, we decline to find fundamental error. There-

fore applying procedural default, we decline to give any further consideration to these claims.

### 2. Failure to Give Reckless Homicide Instruction

The defendant next claims that the trial court erred when it refused to give her tendered instructions on reckless homicide. She argues that reckless homicide is an inherently included offense of murder, and that there is a serious dispute in the evidence regarding whether the defendant acted with a knowing or reckless *mens rea.*

When a defendant requests an instruction covering a lesser-included offense, a trial court applies the three-part analysis set forth in *Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995). The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. *Id.* If so, the trial court must determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses. *Id.* at 567; *see also Brown v. State,* 703 N.E.2d 1010, 1019 (Ind.1998). If, in light of such a dispute, " 'a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense.' " *Brown,* 703 N.E.2d at 1019 (quoting *Wright,* 658 N.E.2d at 567). When a trial court has made an express finding that there is no serious evidentiary dispute, its ruling is reviewed for abuse of discretion. *Brown,* 703 N.E.2d at 1020.

The defendant asserts, and the State agrees, that reckless homicide is an inherently lesser-included offense of murder. Only the level of culpability required distinguishes the crimes of reckless homi-

cide and murder. As charged in this case, a conviction for murder requires that the defendant had a "knowing" level of culpability, *i.e.,* that the defendant was aware of the high probability that her conduct would result in the death of another when she engaged in the activity. Ind.Code § 35–41–2–2(b); Ind.Code § 35–42–1–1. Reckless homicide, however, requires a "reckless" level of culpability, *i.e.,* that the defendant "engage[d] in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c); Ind.Code § 35–42–1–1. In ruling upon the defendant's tendered instructions on reckless homicide, the trial court expressly found no serious evidentiary dispute. Record at 3851–52.

Although not presented to the trial court, the defendant argues on appeal that "there is nothing in what [the defendant told the police investigators] that negates the possibility that she started the fire recklessly." Br. of Defendant Appellant at 52. The defense argues:

> Nothing she said would preclude a jury finding that she started the fire with the intent of getting [her husband] (who had threatened just the week before to burn the house down) in trouble; getting the insurance money from the house being burned up to solve her financial problems; and that she and [her boyfriend] would be looked upon as heroes for saving the kids from the fire that [her husband] started, but the fire got out-of-hand too quickly.

*Id.*

We decline to infer the existence of a serious evidentiary dispute based on speculation from the absence of evidence. The undisputed evidence at trial was that flammable liquid was poured and ignited around the bedroom in which the children

had been locked. The trial court did not abuse its discretion. There was no serious evidentiary dispute that these actions were done with an awareness of the high probability that the actions would result in the death of the children. *See* Ind.Code § 35–41–2–2(b).

### 3. Life without Parole Sentence

■ For each murder of her three children, ages 1, 2, and 4, the defendant was sentenced to life without parole. Alleging that her sentence is manifestly unreasonable, the defendant seeks our review and revision of the sentence pursuant to Ind. Appellate Rule 17(B).[4] We do not reach this issue because of the relief required by the recent intervening decision of the United States Supreme Court. *See Ring v. Arizona,* —— U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

The State in this case sought a sentence of life without parole for each murder count pursuant to Ind.Code § 35–50–2–9, based on the qualifying aggravating circumstance that each victim was under the age of twelve. *See* Ind.Code § 35–50–2–9(b)(12). The jury during the sentencing phase was unable to reach a unanimous recommendation, and thus there was no jury determination finding the qualifying aggravating circumstances beyond a reasonable doubt. The judge then found the required aggravating circumstances proved beyond a reasonable doubt and sentenced the defendant to three sentences of life without parole.

The United States Supreme Court, however, has since determined that the Sixth Amendment to the U.S. Constitution requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435, 455 (2000). *Ring v. Arizona,* made it clear that *Apprendi* applies to capital sentencing schemes. —— U.S. at ——, 122 S.Ct. at 2443, 153 L.Ed.2d at 556. Contrary to *Apprendi* and *Ring,* the defendant's sentences to life without parole pursuant to Ind.Code § 35–50–2–9, were based on facts extending the sentence beyond the maximum authorized by the jury's verdict finding her guilty of murder. Because of the absence of a jury determination that qualifying aggravating circumstances were proven beyond a reasonable doubt, we must therefore vacate the trial court's sentence of life without parole.

Upon remand for resentencing, unless otherwise directed by an appellate court, a trial court may order a new sentencing hearing,[5] may order additional briefing and

---

4. This rule is now App.R. 7(B).

5. In his dissent, Justice Sullivan expresses concern that a new penalty phase jury should not be convened on remand because Ind.Code § 35–50–2–9(f) calls for the discharge of a jury unable to agree on a sentence recommendation. This position is consistent with his separate opinion in *Burris v. State,* 642 N.E.2d 961, 969–70 (Ind.1994)(Sullivan, J., concurring in result), but this interpretation is contrary to established practice. In trials for criminal offenses, it is not uncommon for juries that are unable to reach unanimous verdicts to be discharged and new juries convened in their place. *See Burris,* 642 N.E.2d

at 969 ("In the ordinary situation, the discharge of the jury and a possibility of retrial with a new jury is the standard procedure."); *see also, e.g., McCarthy v. State,* 749 N.E.2d 528, 532 (Ind.2001); *Buell v. State,* 668 N.E.2d 251 (Ind.1996); *Hughley v. State,* 737 N.E.2d 420, 422 (Ind.Ct.App.2000). Likewise, we have remanded for new penalty phase trials in capital cases where the penalty phase jurors were unable to reach a unanimous recommendation. *Ben–Yisrayl v. State,* 738 N.E.2d 253, 267–68 (Ind.2000)(affirming post-conviction remand for new penalty phase trial following discharge of jury unable to render a recommendation); *Burris,* 642

then issue a new order, or may issue a new sentencing order without further proceedings. *O'Connell v. State,* 742 N.E.2d 943, 952–53 (Ind.2001). In the present case, if the State elects to dismiss its request for sentencing to life without parole, the trial court may proceed accordingly and resentence the defendant to a term of years as authorized by the murder statute, Ind. Code § 35–50–2–3(a). If the State proceeds with its life without parole sentencing request, the trial court shall convene a new penalty phase jury and conduct further proceedings pursuant to Ind.Code § 35–50–2–9.

**Conclusion**

We affirm the defendant's convictions, we vacate the sentences of life without parole, and we remand this case to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and RUCKER, J., concur.

SULLIVAN, J., dissents with separate opinion.

BOEHM, J., dissents with separate opinion in which SULLIVAN, J., concurs.

SULLIVAN, Justice, dissenting.

I

I respectfully dissent from the majority's conclusion that the probative value of defendant's July 28 interview by police

outweighed its prejudicial effect. The majority sets forth in its opinion twelve explicit assertions of the fact of defendant's guilt made by the police during the interview. In *Smith v. State,* 721 N.E.2d 213, 216 (Ind.1999), we held that two such assertions of fact made by a police detective during a similar interview constituted error. Here, the error seems more severe than in *Smith.* In this regard, I concur in Justice Boehm's dissent.

II

I agree with the majority that *Ring v. Arizona,* —— U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), renders Bostick's sentence unconstitutional. I do not agree, however, that life without parole is an option on remand.

After declaring Bostick's sentence unconstitutional under *Ring,* the majority opinion says, "If the State proceeds with its life without parole sentencing request, the trial court shall convene a new penalty phase jury and conduct further proceedings pursuant to Ind.Code § 35–50–2–9." But the jury in Bostick's case was unable to agree on a sentencing recommendation. Indiana Code § 35–50–2–9—the statute which sets forth the procedure to be followed in cases in which sentences of death and life without parole are sought—explicitly provides that if the jury is unable to reach a unanimous recommendation, "the court shall discharge the jury and proceed as if the hearing had been to the court

---

N.E.2d at 964 ("Common sense and judicial economy dictate the trial judge should have the latitude to assemble a new jury....."). New jury penalty phase trials have similarly occurred in various other death penalty cases where the penalty phase jury was discharged after rendering a recommendation and the case was thereafter remanded on appeal. *See, e.g., Rondon v. State,* 711 N.E.2d 506, 523 (1999); *Averhart v. State,* 614 N.E.2d 924, 930, 935 (Ind.1993); *Castor v. State,* 587 N.E.2d 1281, 1283, 1290 (Ind.1992). In addi-

tion, we have expressly recognized that new juries may be assembled upon remand in habitual offender cases. *Stewart v. State,* 688 N.E.2d 1254, 1258 (Ind.1997); *Funk v. State,* 427 N.E.2d 1081, 1088–89 (Ind.1981); *State v. McMillan,* 274 Ind. 167, 174–76, 409 N.E.2d 612, 617–18 (1980). In *McMillan* we declared: "It is in the public interest that the [S]tate be given another opportunity to secure an enhanced penalty should the first attempt result in a deadlocked jury." *Id.* at 176, 409 N.E.2d at 618.

alone." *Id.*, § 35–50–2–9(f). Thus there is no statutory authority to convene a new penalty phase jury once the original jury has been unable to reach a recommendation.

Unlike *O'Connell v. State*, 742 N.E.2d 943 (Ind.2001), this is not a situation where there was trial court error in imposing sentence. Rather, the statutory scheme pursuant to which sentencing was imposed violated the Sixth Amendment in this circumstance. On remand, the trial court must both follow the statute (which does not provide for a new penalty phase jury in this circumstance) and follow the Constitution (which, as interpreted by *Ring*, does not permit the imposition of life without parole in this circumstance).

BOEHM, Justice, dissenting.

I agree with Justice Sullivan that the transcript of the July 28 interview was erroneously admitted into evidence. In my view, the interrogating officers' statements were inadmissible under Evidence Rule 704(b) and therefore the interview was inadmissible under Evidence Rule 403.

In this several hour session, Bostick consistently denied any recollection of setting the fire. The probative value of the interview, if any, is found in Bostick's statement that if she did commit the crime, it was motivated by animosity towards her husband. The interview contains many statements by the interrogating officers that "we know" Bostick was guilty of the crime. These were inadmissible under Evidence Rule 704(b) as opinions as to guilt. In my view, the minimal probative value of Bostick's admissible statements does not outweigh the prejudicial effect of these statements, even giving substantial deference to the trial court's discretion on that issue. If Bostick's response had been disentangled from the offending statements, presumably they could have been admitted. But that was not done and accordingly, the interview should have been excluded under Rule 403.

The majority's rationale that the interrogators' statements were simply questions in declarative form does not persuade me. The interrogation in *Smith v. State*, 721 N.E.2d 213, 216 (Ind.1999) cited by the majority as an example of an acceptable statement designed to elicit a response was:

> Q: Well, you know, if we ... anybody we brought in here who would say in your gut who do you think might have done this ...
>
> A: Um–Hum. They would probably said me.
>
> Q: Omond. How does it feel to be, have that kind of reputation? Everybody wants you.
>
> A: Everybody! That's messing me up.

That is a far cry from the repeated exchanges between Bostick and her interrogators quoted by the majority. Here the interrogators placed their opinions as to Bostick's guilt before the jury, reinforced by their claim that they "knew" Bostick was guilty. This technique wholly eviscerates Rule 704(b), and does it in a mode that is more pernicious than permitting a witness to testify in court as to guilt because the interrogator is not subject to cross examination as to the source of this claimed "knowledge."

When Bostick objected to the admission of the videotape and transcript of the July 28 police interview during the trial, she did so for the reasons stated in her written motion to exclude evidence, previously filed with the trial court. These included the argument that even after redaction of the polygraph references, the resulting statements lacked "evidentiary value other than accusation by the interrogators." I think this contention sufficiently raised the

704(b) issue to preserve it for appeal. Accordingly, I agree with Justice Sullivan that this case should be remanded for retrial.

SULLIVAN, J., concurs.