James **HUFFMAN**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee.

No. 49A02–0405–CR–424.

Court of Appeals of Indiana.

May 2, 2005.

Transfer Denied June 21, 2005.

Katherine A. Cornelius, Marion County Public Defender Agency, Appellate Division, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

James Huffman appeals the sentence he received following his plea of guilty to two counts of murder. The sole issue he presents upon appeal is whether his sentence violates the rule of law announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

We affirm.

Huffman was charged with the murder of his ex-girlfriend, Chassidy Joiner, who was the mother of his children, and with the murder of her new boyfriend, Ralph Downend. In addition, he was charged with theft as a Class D felony, carrying a handgun without a license as a Class A misdemeanor, and invasion of privacy as a Class A misdemeanor. In exchange for his plea of guilty to the two counts of murder, the State agreed to drop the charges for the remaining counts. In addition, the State filed a request for a sentence of life without parole. One ground upon which that request was sought was because Huffman was alleged to have committed two murders. Huffman moved to withdraw his guilty plea because of the life without parole request on this ground and the State withdrew that request. Nonetheless, a second request for life without parole, based upon the allegation that Huffman lay in wait before killing Chassidy, remained.

On December 2, 2003, the trial court conducted a guilty plea hearing at which Huffman was informed of his rights. The trial court informed Huffman that per the plea agreement he faced a minimum sentence of fifty years and a maximum sentence of life without parole. He was also put on notice that the crime of murder carried a range of forty-five to sixty-five years and that he faced a maximum term of years sentence of one-hundred thirty years. Huffman acknowledged that he understood the potential sentences he faced. The court then stated that she understood that it was the parties' intention that the court hear the evidence with respect to the

second phase of the trial, i.e. the evidence with respect to aggravation and mitigation. The parties agreed.

Huffman was then informed of his right to have a jury hear the evidence with respect to the counts to which he was pleading guilty and for the life without parole request. He responded that he understood. He also stated that he understood he was waiving his right to have a jury determine whether he should receive the punishment of life without parole. In an effort to make sure that Huffman understood his rights, the court again addressed the right to a trial by jury, stating, "The jury has the right under the Federal Constitution to make a decision about whether, number one, the State has proved the aggravators by proof beyond a reasonable doubt, and the jury has the right to determine normally whether the aggravators outweigh the mitigators. Do you understand that?" Transcript at 15. Huffman responded, "Yes." Tr. at 15. The court then noted that the jury would normally make a binding determination with respect to the penalty phase of the case. Finally, the court asked Huffman, "And you are waiving your right to have a jury make those determinations with respect to the, what we call the penalty phase, or the life without parole phase in this case?" Tr. at 15. Huffman responded, "Yes, I am." Tr. at 15.[1]

■ In *Blakely*, the United States Supreme Court applied the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 542 U.S. 296, 124 S.Ct. at 2536. Nonetheless, the Court also stated:

> "But nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty." *Id.* at ——, 124 S.Ct. at 2541 (citations omitted).

*Blakely* had not been decided at the time that Huffman waived his right for a jury to hear the facts for purposes of sentencing. It is in reliance upon this fact that Huffman now claims his waiver of rights does not satisfy the waiver discussed in *Blakely*. Specifically, Huffman asserts that *Blakely* requires that he be provided notice of each specific aggravating factor the State intends to introduce. He then argues that he was informed only of the potential aggravating factor of lying in wait. Because that factor applied to the request for life without parole, he opines that he waived his right to a jury finding only with respect to the possibility of life without parole and not to the standard term of years sentence.

■ While this argument is creative, we are not persuaded. First, we do not read *Blakely* to require that a defendant be provided notice of every fact upon which the State may rely to seek an enhanced sentence. Additionally, Huffman's right to have a jury hear the evidence for sentencing arose from the request that he be sentenced to life without parole. *See Bos-*

---

**1.** Huffman received consecutive sentences for sixty-five years upon each of the murder convictions.

*tick v. State,* 773 N.E.2d 266, 273 (Ind. 2002). Importantly, Huffman waived that right with respect to any sentence that he could receive. This is demonstrated in the trial court's acknowledgment that he could face a minimum sentence of fifty years, a maximum term of years sentence of one-hundred thirty years, or life without parole, and Huffman's continued agreement to waive a jury determination. Through his actions, Huffman waived the right to have a jury hear the evidence for sentencing purposes for any possible sentence he could receive and authorized the trial court to hear the evidence without the assistance of a jury. This is precisely what the Supreme Court stated was allowable in *Blakely* when it acknowledged that defendants may consent to judicial factfinding.

The sentence is affirmed.

BAILEY, J., and MATHIAS, J., concur.