


FILED
Jun 22 2026, 9:11 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Anthony Minney,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 22, 2026

Court of Appeals Case No.
25A-CR-1689

Appeal from the Marion Superior Court

The Honorable Ross Anderson, Magistrate

Trial Court Cause No.
49D27-2309-F2-25965

---

**Opinion by Judge May**
Judges Mathias and Felix concur.[1]

---

[1] Judge Mathias voted "Not for Publication".

**May, Judge.**

[1] Anthony Minney appeals following his convictions of Level 2 felony dealing in methamphetamine,[2] Level 2 felony dealing in a narcotic drug,[3] Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"),[4] and Class B misdemeanor possession of marijuana,[5] and his adjudication as a habitual offender.[6] The parties present two issues for our review:

> 1. Whether Minney waived his challenge under the Indiana Constitution to the police search of a vehicle in which he was a passenger; and
>
> 2. Whether the trial court erred when it empaneled a new jury to decide whether Minney qualified for a habitual offender sentence enhancement.

We affirm.

## Facts and Procedural History

[2] On September 11, 2023, Indianapolis Metropolitan Police Department officers were conducting surveillance of a white Chrysler sedan as part of a drug dealing investigation. Gregory Warren ("Gregory") was the target of the investigation,

---

[2] Ind. Code § 35-48-1.1(a)(2), (e)(1) (2017).

[3] Ind. Code § 35-48-4-1(a)(2), (e)(1) (2023).

[4] Ind. Code § 35-47-4-5(c) (2023).

[5] Ind. Code § 35-48-4-11(a)(1) (2018).

[6] Ind. Code § 35-50-2-8 (2023).

and he was driving the vehicle. Minney rode in the front passenger seat, and Gregory's brother, Tommy Warren, rode in the back seat. The officers followed the vehicle to different locations around downtown Indianapolis. One of those locations was a gas station located at 16th and North Illinois Street where Minney got out of the car and went into the gas station. He was wearing a black fanny pack draped across his shoulder. After a few minutes, Minney returned to the vehicle's front passenger seat. The vehicle eventually left the gas station and continued traveling around downtown.

[3] Near the 400 block of North Alabama Street, the officers initiated a traffic stop of the vehicle to execute a warrant for Gregory's arrest. The officers surrounded the vehicle and ordered the occupants to stick their hands out of the windows to ensure they were not handling any weapons. An officer noticed Minney "had taken his hands inside the vehicle and moved toward the center; down toward the center of the car[.]" (Tr. Vol. II at 196.) The officer repeated the command for Minney to stick his hands out the window, and Minney complied with that command. The officers then ordered Minney and the other occupants out of the vehicle.

[4] When the officers approached the vehicle to make sure no other occupants were inside, they detected the odor of marijuana emanating from the vehicle. The officers searched the vehicle and found the black fanny pack under the front passenger seat where Minney had been sitting. Inside the fanny pack, the officers found Minney's car keys, a digital scale, a firearm, and various narcotics packaged in small plastic bags. The officers also found "a powdery

controlled substance" and two torn baggies scattered on the front passenger seat floorboard. (*Id*. at 200.) The Indianapolis-Marion County Forensic Services Agency tested the controlled substances recovered from inside the fanny pack and determined that the fanny pack contained over eighty-six grams of methamphetamine, over thirteen grams of fentanyl, and approximately eleven grams of marijuana.

[5] The State charged Minney with Level 2 felony dealing in methamphetamine, Level 2 felony dealing in cocaine,[7] Level 3 felony possession of cocaine,[8] Level 4 felony possession of a firearm by a SVF, Class B misdemeanor possession of marijuana, Level 2 felony dealing in a narcotic drug, and Level 3 felony possession of a narcotic drug.[9] The State also filed an information alleging Minney qualified for a habitual offender sentence enhancement. On January 3, 2024, Minney filed a motion to suppress. He asserted the search of Warren's vehicle was unconstitutional and asked the trial court to suppress all evidence procured from the search. After an evidentiary hearing regarding the motion to suppress, the trial court denied the motion.

---

[7] Ind. Code § 35-48-4-1(a)(2), (e)(1) (2023).

[8] Ind. Code § 35-48-4-6(a), (d)(2) (2014).

[9] Ind. Code § 35-48-4-6(a), (d)(2) (2014).

[6] The trial court held a trifurcated[10] trial. The first phase consisted of a jury trial on the underlying factual claims. At the end of the first phase, the jury returned a verdict finding Minney guilty of Level 2 felony dealing in methamphetamine, Class B misdemeanor possession of marijuana, and Level 2 felony dealing in a narcotic drug. The jury also returned a guilty verdict on the charge of Level 3 felony possession of a narcotic drug, but the trial court did not enter a judgment of conviction on that count to avoid double jeopardy. In addition, the jury found Minney possessed a firearm.

[7] Minney elected a jury trial on the question of whether he qualified as a habitual offender. That question was tried before the same jury that sat during the first phase of the trial. The jury was unable to reach a verdict, and the trial court declared a mistrial with respect to the habitual offender enhancement. On May 14, 2025, the trial court reconvened for a second jury trial related to the habitual offender enhancement. Both the State and Minney questioned the panel of prospective jurors during voir dire, and a jury panel was seated. The State presented evidence that Minney had been convicted of Class A felony dealing in cocaine[11] and Class C felony possession of cocaine,[12] and the jury returned a verdict finding that Minney was a habitual offender. Minney elected to have a bench trial on the issue of whether he qualified as an SVF. The trial court

---

[10] "Trifurcate" means "[h]aving three forks or branches[.]" Perma | American Heritage Dictionary Entry: trifurcated.

[11] Ind. Code § 35-48-4-1(a), (b) (2001).

[12] Ind. Code § 35-48-4-6(a), (b)(1) (1996).

found Minney qualified as an SVF and entered a judgment finding him guilty of Level 4 felony unlawful possession of a firearm by an SVF.

[8] The trial court subsequently sentenced Minney to a term of twenty years for Level 2 felony dealing in methamphetamine, and the trial court enhanced that sentence by an additional eight years because of the habitual offender finding. The trial court ordered Minney to serve the first twenty years of that sentence in the Indiana Department of Correction ("IDOC") and suspended the final eight years to probation. The trial court sentenced Minney to a term of twenty years for Level 2 felony dealing in a narcotic drug with the final eight years of that sentence suspended to probation. The trial court also sentenced Minney to terms of eight years for Level 4 felony unlawful possession of a firearm by an SVF and 90 days for Class B misdemeanor possession of marijuana. The trial court ordered Minney to serve the sentences concurrently for an aggregate term of twenty-eight years, with twenty years executed in the IDOC and eight years suspended to probation.

## Discussion and Decision

### 1. Vehicle Search

[9] Minney argues the search that occurred was unconstitutional under the Indiana Constitution, and he contends the trial court erred in denying his motion to suppress and admitting the evidence at trial. An appeal following the denial of a motion to suppress and a completed trial is properly framed as a challenge to the admission of the evidence at trial. *See Washington v. State*, 784 N.E.2d 584,

587 (Ind. Ct. App. 2003) (explaining that because defendant proceeded to trial after his motion to suppress was denied, "the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial"). "We generally review a trial court's decision regarding the admission of evidence at trial for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Young v. State*, 244 N.E.3d 950, 958 (Ind. Ct. App. 2024) (internal citation and quotation marks omitted), *trans. denied*. Nonetheless, "we engage in de novo review when an alleged constitutional violation has resulted from the admission of evidence." *Carr v. State*, 274 N.E.3d 444, 452 (Ind. 2026) (internal quotation marks omitted).

[10] The State, however, asserts Minney waived his challenge to the constitutionality of the search by failing to object when the evidence was offered at trial. Evidence Rule 103(a) requires a party claiming error in the trial court's admission of evidence to timely object or move to strike the evidence and to state the specific ground for the objection unless it is apparent from the context. Even when the evidence was the subject of a prior motion to suppress, the objecting party must still renew the objection at trial. *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) ("A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress."). Minney did not object at trial when the State introduced the black fanny pack and its

contents into evidence. Nor did Minney object at trial to the officers' testimony regarding the search. Therefore, Minney waived his challenge to the constitutionality of the vehicle search by failing to object at trial. *See*, *e.g.*, *Mendez-Vasequez v. State*, 217 N.E.3d 591, 594 (Ind. Ct. App. 2023) (holding defendant waived argument that search violated the Indiana Constitution by failing to raise that objection before the trial court), *trans. denied*.

[11] Waiver notwithstanding, Article 1, section 11 of the Indiana Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Although the text of Article 1, section 11 of the Indiana Constitution and the text of the Fourth Amendment to the United States Constitution are nearly identical, "we evaluate a search under our state constitution based on the reasonableness of the conduct of the law enforcement officers under the circumstances, rather than on the expectation of privacy that is commonly associated with analysis under the Fourth Amendment." *State v. Jones*, 191 N.E.3d 878, 891 (Ind. Ct. App. 2022) (internal quotation omitted). We consider three factors when analyzing whether a search was reasonable under the Indiana Constitution: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the

search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[12] Minney argues the odor of marijuana gave rise to only a low degree of concern, suspicion or knowledge of a violation because "it is well known that current Marion County Prosecutor Ryan Mears is not prosecuting marijuana cases." (Appellant's Br. at 11.) Likewise, Minney asserts "[t]he need for law enforcement to search the vehicle and, in turn, Minney's bag was very low, as the crime for which evidence was sought is not one that would result in criminal charges in Marion County." (*Id*. at 13.) However, while Minney presents a novel argument, marijuana possession remains illegal in Indiana. *See* Ind. Code § 35-48-4-11 (outlawing the possession of marijuana). "It follows then that the odor of marijuana reasonably may indicate criminal activity." *Moore v. State*, 211 N.E.3d 574, 582 (Ind. Ct. App. 2023). In addition, "distributing or possessing even small amounts of drugs threatens society." *State v. Timbs*, 169 N.E.3d 361, 373 (Ind. 2021). Thus, we are not persuaded that the officers' degree of concern, suspicion or knowledge that a violation occurred or that the extent of law enforcement needs were low. Moreover, the degree of intrusion was low. *See*, *e.g.*, *Moore*, 211 N.E.3d at 583 (degree of intrusion on normal activities was slight when officers lawfully stopped vehicle for traffic violations and searched car following detection of odor of marijuana). Therefore, based on the totality of the circumstances, we hold the warrantless search was reasonable under the Indiana Constitution. *See*, *e.g.*, *Bradford v. State*, 246 N.E.3d 808, 816-17 (Ind. Ct. App. 2024) (holding warrantless search

of vehicle did not violate Indiana Constitution when odor of marijuana emanating from the vehicle gave rise to a degree of suspicion that was not "marginal," the degree of intrusion was not high, and the search was consistent with law enforcement need "to deter crime and apprehend perpetrators of criminal activity"), *trans. denied*.

## 2. Habitual Offender Phase

[13] Minney next contends the trial court misinterpreted Indiana Code section 35-50-2-8 when it empaneled a new jury to decide the habitual offender enhancement question and allowed the parties to question the potential jurors on the new panel. However, Minney did not object to the empaneling of a new jury, and his claim is therefore waived. *See*, *e.g.*, *Ivory v. State*, 141 N.E.3d 1273, 1281 (Ind. Ct. App. 2020) (holding defendant waived challenge to DNA evidence by not objecting at trial), *trans. denied*.

[14] Waiver notwithstanding, "[m]atters of statutory interpretation, which inherently present pure questions of law, are reviewed de novo." *Edmonds v. State*, 100 N.E.3d 258, 261 (Ind. 2018). "Our goal when interpreting a statute is to determine the legislature's intent. To that end, we first consider the plain and ordinary meaning of the statutory text, taking into account the structure of the statute as a whole." *Gierek v. Anonymous 1*, 250 N.E.3d 378, 385 (Ind. 2025) (internal citation and quotation marks omitted). "When a statute is clear and unambiguous on its face, we give the words their plain, ordinary, and usual meaning, unless a contrary purpose is clearly shown by the statute itself." *City*

*of South Bend v. Dollahan*, 918 N.E.2d 343, 352 (Ind. Ct. App. 2009), *trans. denied*. We remain "[m]indful of what the statute says and what it doesn't say," and "we 'avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results.'" *Gierek*, 250 N.E.3d at 385 (quoting *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016)). "[W]e read the statutory language 'logically and consistently with the statute's underlying policy and goals.'" *Id.* (quoting *Culver Cmty. Tchrs. Ass'n v. Ind. Educ. Emp. Rels. Bd.*, 174 N.E.3d 601, 604-05 (Ind. 2021)).

[15]   Indiana Code section 35-50-2-8(b) provides:

> A person convicted of murder or of a Level 1 through 4 felony is a habitual offender if the state proves beyond a reasonable doubt that:
>
> (1) the person has been convicted of two (2) prior unrelated felonies; and
>
> (2) at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony.

In *State v. McMillan*, our Indiana Supreme Court explained that the issue of whether the defendant is a habitual offender is severable from the question of whether the individual committed the underlying criminal offense. 409 N.E.2d 612, 617 (Ind. 1980). The Court noted that while Indiana Code section 35-50-2-8 mandated that the same jury that decided the defendant's guilt on the underlying felony "must initially decide the habitual offender question," the statute was "silent" on whether it precluded "a different jury from determining

the issue should the first jury fail to reach an agreement." *Id.* The Court observed that "[t]he purpose behind the habitual offender statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies." *Id.* at 618. The Court then held that purpose would be best served if the State was "given another opportunity to secure an enhanced penalty should the first attempt result in a deadlocked jury." *Id.* Thus, the Court allowed the defendants in *McMillan* to be tried on the question of whether they were habitual offenders after the juries who initially convicted them of the underlying felonies deadlocked on the habitual offender issue. *Id.* Accordingly, pursuant to our Indiana Supreme Court's holding in *McMillan*, the trial court was not prohibited from empaneling a new jury to decide the question of whether Minney was a habitual offender.

[16]  Minney asserts amendments to Indiana Code section 35-50-2-8 made after the *McMillan* decision prohibit empaneling a new jury and allowing the parties to question the new venire. In 2014, the General Assembly amended Indiana Code section 35-50-2-8(h) to read:

> If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing. . . . The role of the jury is to determine whether the defendant has been convicted of the unrelated felonies. The state or defendant may not conduct any additional interrogation or questioning of the jury during the habitual offender part of the trial.

Minney contends the plain language of this subsection precludes the trial court from empaneling a new jury if the first jury deadlocks on the habitual offender

question. However, Minney also states he "does not here take the position that the statute requires the trial court empanel a jury without voire [sic] dire at all as parties cannot be precluded from asking questions in voire [sic] dire and such an interpretation would render an absurd result." (Appellant's Br. at 16) (citing Ind. T.R. 47(D) ("The court shall permit the parties or their attorneys to conduct the examination of prospective jurors, and may conduct examination itself.")).

[17] If we were to follow the logic of Minney's argument, the State would be unable to retry an offender on the habitual offender question following a deadlocked jury because Indiana Code section 35-50-2-8(h) would prohibit the parties from conducting voir dire, and Trial Rule 47(D) requires that the trial court allow the parties to examine prospective jurors. That strikes us as absurd. *See*, *e.g.*, *ESPN, Inc.*, 62 N.E.3d at 1199-1200 (rejecting reading of statute that would lead to absurd results). Moreover, when appellate courts have reversed habitual offender findings on appeal, we have remanded the matter to the trial court for a retrial on that question. *See*, *e.g.*, *Dexter v. State*, 959 N.E.2d 235, 240 (Ind. 2012) (reversing habitual offender enhancement finding and holding State was not barred from retrying defendant on the enhancement). Therefore, we reject Minney's reading of Indiana Code section 35-50-2-8(h). The statute's purpose is best served by allowing the State to retry a defendant on the habitual offender question if the first jury deadlocks on the issue. *See*, *e.g.*, *McMillan*, 409 N.E.2d at 618 (holding habitual offender statute's purpose was best served if State was

allowed to retry defendants on habitual offender question after first jury deadlocked on the issue).

## Conclusion

[18] Minney waived his challenge to the constitutionality of the search by not objecting at trial. Waiver notwithstanding, the search did not violate Article 1, section 11 of the Indiana Constitution. In addition, the trial court did not err when it empaneled a new jury to adjudicate the habitual offender enhancement after the first jury deadlocked on the issue. Accordingly, we affirm the trial court.

[19] Affirmed.

Mathias, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Joseph K. Wyckoff
Banks & Brower, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

John R. Oosterhoff
Deputy Attorney General
Indianapolis, Indiana