**Robert TURBEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 13S00–9810–CR–603.

Supreme Court of Indiana.

April 19, 2000.

**1246**

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

A jury convicted Robert Turben of murder in the death of his wife. The trial court sentenced him to sixty-five years imprisonment. In this direct appeal Turben contends his conviction should be reversed because the trial court erred by admitting an autopsy photograph into evidence. We agree the trial court erred. However the error was harmless and we therefore affirm.

The record shows that Turben and his wife Jenny had a turbulent marriage, separating and reuniting several times. In October 1997, Jenny and the parties' three minor children moved out of the marital home and began living with a relative. Deciding that she would tell Turben of her plans to file for divorce, Jenny took the children to the marital residence for dinner on November 3, 1997. Later that evening, Turben returned the children to the home of Jenny's relative. Asked about Jenny, Turben explained that the couple had engaged in an argument and that Jenny had left the house walking. Friends and relatives began searching for Jenny and alerted the police that she was missing. The following day police questioned Turben about Jenny's disappearance. Although first claiming Jenny left the house alone after an argument the previous night, Turben ultimately admitted that he had strangled Jenny with a cord. He then accompanied officers to a cave in the Harrison Crawford Forestry where Jenny's body was discovered in a black canvas bag beneath a pile of rocks. The cord was still around her neck.

Turben was charged with murder and in due course the case was tried to a jury. In its case in chief the State called pathologist George Nichols who testified that he had performed an autopsy on Jenny and concluded that she died from strangulation. Specifically, the pathologist testified that the cord cut off the supply of oxygenated blood to Jenny's brain and caused unconsciousness and irreversible brain damage, resulting in death. To accompany the pathologist's testimony, the State sought to introduce several photographs

taken during the autopsy. One of the photographs showed gloved hands manipulating a bloody mass with a probe. The mass purportedly represented the victim's head with the skin and bones cut open and peeled back to expose the interior of the victim's neck. Over Turben's objection the photograph was introduced into evidence. The jury convicted Turben as charged and the court sentenced him to sixty-five years imprisonment. This direct appeal followed.

■ Turben contends the trial court erred by admitting the autopsy photograph into evidence because its prejudicial impact on the jury outweighed its probative value. We review the trial court's admission of photographic evidence for an abuse of discretion. *Byers v. State*, 709 N.E.2d 1024, 1028 (Ind.1999). Photographs that depict a victim's injuries are generally relevant and thus admissible. *Harrison v. State*, 699 N.E.2d 645, 648 (Ind.1998). The relevancy requirement also can be met if the photographs demonstrate or illustrate a witness' testimony. *Id.* However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Ind.Evidence Rule 403.

■ In this case the State seems to acknowledge the photograph is graphic. However, the State contends the photograph is relevant because it illustrates the pathologist's testimony concerning the cause of death, namely, strangulation. Assuming the photograph here is relevant, it is only marginally so. Our review of the record shows a bloody mass that barely resembles a human form. We doubt the jury was further enlightened concerning the cause of death by viewing this gruesome spectacle. This court has long held that photographs of a deceased victim during and after an autopsy is performed may be held inadmissible on grounds that they serve no purpose other than to arouse the emotions of the jury. *Loy v. State*, 436 N.E.2d 1125, 1128 (Ind. 1982). Indeed autopsy photographs are generally inadmissible if they show the body in an altered condition. *Allen v. State*, 686 N.E.2d 760, 776 (Ind.1997), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 667. This is so because "such a display may impute the handiwork of the physician to the accused assailant and thereby render the defendant responsible in the minds of the juror for the cuts, incisions, and indignity of an autopsy." *Loy*, 436 N.E.2d at 1128; *see also, Warrenburg v. State*, 260 Ind. 572, 574, 298 N.E.2d 434, 435 (1973) (error to admit autopsy photograph which showed a partially resewn corpse, nude from the waist up, with the right arm of the corpse severed completely and the left arm reattached with gaping sutures); *Kiefer v. State*, 239 Ind. 103, 112, 153 N.E.2d 899, 903 (1958) (reversible error to admit autopsy photographs showing hands and instruments of surgeon inside chest of victim). Given the gruesomeness of the photograph in this case, along with its marginal relevance, we conclude the photograph's prejudicial impact outweighed its probative value. Accordingly, the trial court erred by admitting the photograph into evidence.

■ However, not every trial error requires reversal. Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind.1995); Ind.Trial Rule 61. To determine whether an error in the introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the jury. *Alva v. State*, 605 N.E.2d 169, 171 (Ind.1993).

■ Turben contends his defense at trial was that he killed his wife in a sudden heat of passion. He argues the inflammatory photograph unfairly influenced the jury to reject his defense and thus the jury returned a verdict of murder rather than voluntary manslaughter. "Sudden heat" is

**1248**

an evidentiary predicate that allows mitigation of a murder charge to voluntary manslaughter. *Bane v. State*, 587 N.E.2d 97, 100 (Ind.1992). It is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. *Wilson v. State*, 697 N.E.2d 466, 474 (Ind. 1998).

In support of his sudden heat contention Turben introduced evidence of his stormy marriage and facts supporting the claim that he and his wife frequently fought and argued. He also called as a witness a clinical psychologist who testified that Turben suffered an "explosive mood disorder." According to the psychologist, Turben told him that on the night of the murder he and his wife argued, she threw a baby bottle at him and he responded by hitting her in the face. Turben told the psychologist he could not remember what happened next, but shortly thereafter "discovered" that his wife was dead. R. at 1320. The psychologist acknowledged that even in past highly charged situations Turben "has tended to walk away." R. at 1328. He also acknowledged that Turben could have "controlled" his behavior, ... "he had learned to do that before." R. at 1324.

■ We first observe that words alone are not sufficient provocation to precipitate sudden heat for purposes of determining whether a killing constitutes voluntary manslaughter as opposed to murder. *Gregory v. State*, 540 N.E.2d 585, 593 (Ind. 1989). Thus, to the extent Turben claims that he was provoked because his wife told him she was obtaining a divorce and that she engaged in other verbal harangues does not support his sudden heat contention. Nor was the jury bound to be persuaded that Turben being hit with a baby bottle combined with his emotional disorder provided sufficient provocation for a voluntary manslaughter conviction. A stressful encounter does not inflame sudden heat sufficient to mitigate murder to

voluntary manslaughter simply because a defendant suffers from a psychological disorder which gives him a "hair trigger." *Wilson v. State*, 697 N.E.2d at 474.

■ The record before us shows not only that Turben and his wife had frequently fought and argued, which did not result in death, but also that Turben could control his behavior and in the past had simply walked away from highly stressful situations. Further, there was evidence before the jury that Turben threatened to kill his wife a week before the fatal night when she had once again moved out of the marital home. There was also testimony that Turben had told a friend that the shotgun shells in his truck were intended for his wife if she ever decided to leave him. In sum, the absence of substantial evidence of sudden heat convinces us that there was no serious issue of whether the defendant committed murder or voluntary manslaughter. We are convinced that the prejudice resulting from the erroneously admitted photograph did not cause or significantly contribute to the jury's rejection of voluntary manslaughter. We find that the error in admission of the photograph did not affect the substantial rights of the defendant. Accordingly, although the trial court erred by admitting the photograph, the error was harmless.

Judgment affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.