APPENDIX

Donnell HUGHLEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9912–CR–877.

Court of Appeals of Indiana.

Oct. 17, 2000.

Transfer Denied Dec. 6, 2000.

John Pinnow, Greenwood, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge

Donnell L. Hughley appeals his conviction of Voluntary Manslaughter,[1] a class A felony. Hughley presents the following restated issues for review:

1. Did the trial court abuse its discretion in admitting the testimony of a witness from a former trial, when the witness refused to testify in the second trial?

2. Did the trial court commit reversible error in admitting evidence that Hughley possessed a handgun in January 1998?

We affirm.

The facts favorable to the judgment are that on January 4, 1999, Michael Kile

---

1. Ind.Code Ann. § 35–42–1–3 (West Supp. 1999).

wanted to purchase cocaine. Believing that the presence of his two sons would reduce the chance of violence, Kile took them with him. Six-year-old William sat in the back seat behind Kile and twelve-year-old Michael, Jr. sat in the front seat. In order to get money with which to purchase the drugs, Kile drove to the house of Gregory Helms and asked Helms to trade him $20 for a power drill. Helms told Kile he would make the trade after Kile took his children home. Kile left and promised to return.

Kile drove to the 2300 block of Carrollton in Indianapolis, where he encountered Hughley and Monolito Ford. Ford approached the car. Kile told Ford that he had his children with him and Ford walked away. Kile then asked Hughley to trade him some crack cocaine for the power drill. Hughley told Kile he did not want to trade for the drill. Kile indicated he wanted a "twenty piece" and Hughley handed Kile $20 worth of crack cocaine. In return, Kile placed a piece of paper into Hughley's hand and drove away. When Hughley realized that the piece of paper Kile had handed him was not money, he held onto Kile's car. After being dragged several feet, Hughley let go of the car, pulled out a gun, and fired several shots at Kile's vehicle. One of the shots struck William in the head. Hughley walked back to Ford and told him that Kile had "ripped him off." *Record* at 622. William died eight days later as a result of the gunshot wound to his head.

Hughley was charged with two counts of murder. A jury trial on the charge commenced on April 12, 1999. That trial ended in a hung jury. A second jury trial commenced on June 21, 1999. At the conclusion of that trial, Hughley was convicted as set out above. Further facts will be set forth where relevant.

1.

Christopher Valentine was a friend of Hughley's. Valentine testified at the first trial that he did not witness the shooting. He testified concerning the details Hughley provided about the shooting during a conversation between Valentine and Hughley that occurred several days after the incident. Those details were essentially the same as those set forth previously in this opinion. In addition, Valentine testified that Hughley told him he thought he had killed the boy in the back seat. Valentine then testified that Hughley did not tell him that he shot the boy, but instead that he heard that information on the street. Valentine refused to testify at the second trial on the ground that his testimony might incriminate him. At the second trial, the State sought to introduce Valentine's testimony from the first trial. The trial court granted the motion over Hughley's objection. Hughley contends upon appeal that the trial court erred in permitting the State to introduce Valentine's testimony from the first trial.

The decision whether to admit former testimony of an unavailable witness rests within the trial court's discretion. *Stidham v. State*, 637 N.E.2d 140 (Ind. 1994). Prior recorded testimony may be admitted if the trial court finds that 1) the testimony was given under oath at a prior judicial proceeding, 2) the party against whom the testimony is offered had the opportunity to cross-examine the witness at the prior proceeding, and 3) the witness is unavailable at the time of the later proceeding. *Id.* For purposes of admitting former testimony, a witness is unavailable if he refuses to testify at a second trial. *See Brown v. State*, 671 N.E.2d 401 (Ind.1996); *Stidham v. State*, 637 N.E.2d 140; *Murphy v. State*, 518 N.E.2d 1079 (Ind.1988).

We note also that Rule 804(b)(1) of the Indiana Rules of Evidence provides that, under certain conditions, former testimony is not excluded by the hearsay rule if the witness is unavailable. Those qualifying conditions are set forth in subsection (b)(1) and are similar to the principle set out in *Stidham* concerning the admissibility of

former testimony. Subsection (b)(1) states:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.
>
> (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Evid. R. 804(a)(1) clarifies that a witness is unavailable for purposes of Rule 804 if the witness refuses to testify under claim of privilege.

■ Hughley does not dispute that the testimony in question was given while under oath, nor does he challenge Valentine's unavailability to testify at the second trial. Rather, Hughley's challenge to the testimony centers upon his claim that he did not have the opportunity to cross-examine Valentine when Valentine testified at the first trial.

Valentine's testimony at the first trial was confusing and contradictory. He had testified before a grand jury to the effect that Hughley had told him that he shot the victim while attempting to shoot Kile. Later, but before the first trial, Valentine was subpoenaed to give a statement under oath to Hughley's counsel concerning his conversation with Hughley about the incident. In the statement to defense counsel, Valentine recanted his grand jury testimony. At the first trial, Valentine was questioned at length by the prosecutor about his recantation. His testimony was confusing and contradictory. Generally, however, he testified that his testimony before the grand jury was truthful, and that he lied to defense counsel out of fear that he would be prosecuted for another offense if he repeated his grand jury testimony. At the end of his rambling, confusing testimony under questioning by the State, Valentine was cross-examined very briefly by Hughley's trial counsel. We reproduce below that cross-examination as well as the last few questions asked by the prosecutor in order to place the cross-examination in context.

> Q. It was just you, the prosecutor asking questions, and the Grand Jury listening to your testimony. Right?
>
> A. Yeah.
>
> Q. Nobody was holding a gun to your head, were they?
>
> A. No.
>
> Q. Nobody was making you say anything in front of that Grand Jury, were they?
>
> A. No.
>
> Q. You just don't want to testify against your friend, do you?
>
> A. (mumbling)
>
> Q. Yes or no?
>
> A. I was scared.
>
> Q. I'm talking about today.
>
> A. Yeah. I mean,—I don't understand.
>
> Q. Yeah, what?
>
> A. I don't understand these questions. I mean,—
>
> Q. I think you understand just fine. I don't have any further questions for you.
>
> THE COURT: Mr. Pratt [defense counsel].
>
> MR. PRATT: Judge, I'm seriously confused. Can we take a break at this point before I –
>
> THE COURT: No, we're going to keep going, sir. If you don't – if you need thirty seconds to collect your thoughts, that's fine.
>
> MR. PRATT: I do, Judge. That'll be fair. Thank you, Judge.
>
> CROSS EXAMINATION OF CHRISTOPHER VALENTINE
>
> QUESTIONS BY MARCEL PRATT, DEFENSE COUNSEL

Q. Mr. Valentine, very simply, are you telling the truth today?

A. Truth of – I mean, can't you give it to me in a better way? I mean,—.

MR. PRATT: Judge, I have no further – no questions, Your Honor. I have no questions.

*Record* at 264–66. Hughley contends on appeal that Valentine's response to trial counsel's question amounted to "stone-walling" and indicated that "[a]ny further questioning would have resulted in further disingenuous responses." Appellant's Brief at 13. Therefore, according to Hughley, Valentine's lack of co-operation denied Hughley a chance to conduct an effective cross-examination.

We do not necessarily disagree with Hughley's assessment that Valentine's response to defense counsel's question was "stone-walling." Nevertheless, regardless of whether the answer was a result of Valentine's lack of cooperation or was a product of Valentine's confusion, the fact remains that defense counsel had an opportunity to question Valentine more thoroughly than he did. We note in this regard that Valentine frequently responded to the State's questions during direct examination in the same manner that he responded to defense counsel's lone question upon cross-examination. The State could have responded in the same manner as did defense counsel, by cutting short the questioning and not pressing Valentine to clarify his sometimes evasive and often confusing answers The State persisted, however, and more or less accomplished that end. Defense counsel apparently decided that the benefits of further questioning was not outweighed by the costs. In any event, the fact that defense counsel decided not to conduct a more thorough questioning of Valentine was a matter of inclination, not opportunity.

Hughley had the opportunity for cross-examination during Valentine's prior testimony that the State sought to introduce. Therefore, the evidence met the criteria for admission under Evid. R. 804 and *Stid-*ham v. State, 637 N.E.2d 140. The trial court did not err in admitting the evidence.

2.

Police never recovered the weapon that Hughley used in the shooting. At trial, the State introduced the testimony of Officer David Smiley of the Indianapolis Police Department. Officer Smiley patrolled the area in which Hughley lived. Officer Smiley testified that on an unspecified day in January 1998, but not January 4, 1999, he came into contact with Hughley. At the time, Hughley was armed with an Interarms Star 9 mm handgun. Hughley had a permit to carry the gun. Hughley contends that the trial court erred in permitting Officer Smiley to testify in that regard over Hughley's objection that the evidence was not relevant.

■ We need not decide whether the court erred in admitting the gun because, even assuming for the sake of argument that the court erred in that regard, reversal is not warranted. *See Turben v. State,* 726 N.E.2d 1245 (Ind.2000).

■ Errors in admitting evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. *Id.*; Ind. Trial Rule 61. In determining whether an error in the introduction of evidence affected the appellant's substantial rights, we must assess the probable impact of that evidence upon the jury. *Rawley v. State,* 724 N.E.2d 1087 (Ind.2000). *Id.* We will not reverse if the State can demonstrate beyond a reasonable doubt that the error complained of did not contribute to the verdict. If the State presents evidence of guilt that is overwhelming and independent of the challenged evidence, the error is harmless and reversal is not warranted. *Turben v. State,* 726 N.E.2d 1245.

In the instant case, Kile testified that he attempted to steal drugs from Hughley and, while he was driving away, Hughley fired shots at his car, one of which killed

William. Ford testified that, as Kile drove away following a drug deal, Hughley pulled out a handgun and shot at Kile's car, shattering the rear window. Valentine testified that Hughley admitted that he had attempted to kill Kile when Kile tried to drive away without paying for cocaine Hughley had given him, and that he inadvertently shot the child sitting in the back seat. The above evidence was independent of Officer Smiley's testimony about Hughley carrying a gun, and constituted overwhelming evidence of guilt. Therefore, any error in admitting Officer Smiley's testimony was harmless beyond a reasonable doubt, and reversal is not warranted.

Judgment affirmed.

NAJAM, J., and MATHIAS, J., concur.