The PEOPLE of the State of Colorado, Petitioner,

v.

Armando Bailon RAMIREZ, Respondent.

No. 01SC440.

Supreme Court of Colorado,
En Banc.

Oct. 15, 2002.

---

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

In this case, a jury convicted defendant Armando Ramirez of murder in the second degree and first degree criminal trespass, arising out of the death of Maria Ramirez–Sanchez, and the trial court sentenced him accordingly. The defendant, Ramirez, appealed his convictions, claiming that the jury improperly failed to fill out the special verdict form indicating whether the murder conviction was for second degree murder or second degree murder—heat of passion. The court of appeals returned the case to the trial court for resentencing, reasoning that the absence of a jury finding concerning the heat of passion mitigator afforded the defendant the benefit of the assumption that the jury intended the lesser felony. *People v. Ramirez*, No. 99CA164 (Colo. App. May 3, 2001) (not selected for official publication). Because we conclude that there was no evidence that entitled the defendant to an instruction on heat of passion, let alone a verdict to that effect, we reverse the court of appeals and reinstate the sentencing order.

## I. Facts

The defendant, Armando Ramirez, was a friend[1] of the victim, Maria Ramirez–Sanchez.[2] On October 27, 1997, Ramirez

---

1. The parties dispute whether Ramirez and the victim had ever been involved in a sexually intimate relationship. Although a defense witness, a professor of psychology, who examined Ramirez indicated that the relationship was physically intimate, the victim's daughter stated that Ramirez was not her mother's boyfriend, but only a friend. At trial, the trial court referred to Ramirez–Sanchez as "a person who may have been [Ramirez's] girlfriend."

2. Although Armando Ramirez and Ramirez–Sanchez had the same last name, this is purely

stopped by Ramirez–Sanchez's trailer where the victim lived with her eleven-year-old daughter and infant son. Monico Lopez, the man from whom the victim was purchasing the trailer, was also at the trailer conversing with the victim regarding her intention to return to Mexico and the possibility of Lopez providing transportation. After Ramirez arrived, Ramirez and Lopez discussed the trailer's heater, and Lopez subsequently departed.

After Lopez left, Ramirez asked the victim to marry him.[3] The victim stated that she would not marry Ramirez. Ramirez then left. Shortly thereafter, Lopez returned and he and the victim had a brief conversation in his vehicle. Again, Lopez departed. Ramirez then returned, this time entering the trailer. He asked the victim who Lopez was. The victim replied that Lopez was the man selling her the trailer. Ramirez again asked the victim to marry him; the victim replied that "she didn't want [Ramirez] as a boyfriend or a husband, only as a friend."

The victim requested that Ramirez leave because she was tired. Ramirez did not leave but indicated that he wanted to stay. The victim opened the door and pushed Ramirez outside. Ramirez grabbed the victim by the sweater and pulled her outside with him. The victim's daughter followed them outside. Ramirez and the victim yelled at each other. Ramirez then pulled a handgun from his coat and shot the victim. The victim fell to the ground, and Ramirez approached the victim and shot her again. The victim's daughter began struggling with Ramirez. Ramirez shot the victim six to eight more times and the victim died of multiple gunshot wounds. Ramirez fled. The following day, law enforcement officials apprehended Ramirez in New Mexico carrying the gun he had used to shoot the victim.

At trial, the defense psychology expert witness testified that the victim humiliated Ramirez by forcing him to leave her home and also by the substance of the second conversation between the victim and Lopez, which Ramirez claimed to have overheard.[4] The expert gave his opinion that Ramirez had acted as a result of that humiliation and not after deliberation.

At the conclusion of the trial, the judge instructed the jury that it was Ramirez's theory of the case that

> he did not murder Maria Ramirez after deliberation. It is further his answer that he acted in a hasty and impulsive manner when he shot and killed Maria Ramirez.
>
> Finally, Armando Ramirez answers that a combination of factors including, emotional rejection, unrequited expressions of love and affection, jealousy, injured self-esteem, and the coincidental presence of a firearm resulted in the deadly, impulsive act.
>
> If you do not find beyond a reasonable doubt that the defendant acted after deliberation, you should find the defendant not guilty of first degree murder, and you should then consider whether he is guilty of the offense of second degree murder or the offense of second degree murder—heat of passion.

The jury instructions further contained two lesser offense instructions, one of which instructed the jury that if they did not find the defendant guilty of first degree murder, they could nonetheless find him guilty of second degree murder; and the second of which instructed the jury that if they did not find the defendant guilty of first degree murder, they could nonetheless find him guilty of second degree murder or second degree murder—heat of passion. In combination among the various instructions, the trial court outlined the elements of first degree murder, second degree murder and second degree murder—heat of passion.

As to the verdict itself, the trial court directed the jury that they could "not find the defendant guilty of more than one of the

coincidental; they were not related either by blood or by marriage.

3. At trial, witnesses testified that Ramirez had made similar proposals to the victim on prior occasions.

4. Ramirez refused to tell anyone the nature of the conversation he claimed to have overheard because it would be too harmful to his pride.

following offenses: Murder in the first degree[;] Murder in the second degree[;] Murder in the second degree, heat of passion."

Finally, the court instructed, "When you have unanimously agreed upon your verdicts you will select the forms which reflect your verdicts and the foreperson will sign them as the Court has stated. The unsigned form(s) shall also be returned with no markings on them." The court provided five verdict forms. The first one provided signature lines for the foreman to indicate that the jury had found the defendant guilty or not guilty of first degree murder. The second was the same for second degree murder. The third form read: I. We, the jury, find the Defendant, ARMANDO BAILON RAMIREZ, NOT GUILTY of Murder in the Second Degree, Heat of Passion; II. We, the jury, find the Defendant, ARMANDO BAILON RAMIRAZ, GUILTY of Murder in the Second Degree, Heat of Passion. The fourth form related to the Criminal Trespass charge; and the fifth form was a special interrogatory relating to whether the defendant used a deadly weapon in the commission of the crime.

During closing arguments, the prosecutor urged the jury to find Ramirez guilty of first degree murder after deliberation. In response, the defense counsel asked the jury "to look at the charges of second degree murder, to look at the charge of second degree murder as a passion and come back with an appropriate verdict."

After deliberation, the jury signed verdict forms finding the defendant not guilty of murder in the first degree, guilty of murder in the second degree[5] and guilty of first degree criminal trespass.[6] The court then noted that the jury had only completed a portion of the crime of violence special interrogatory and sent the jury back to complete the form.

The jury did not ever complete the form that directed them to find the defendant either guilty or not guilty of second degree murder—heat of passion. Neither the trial judge nor the parties mentioned that omis-

sion. The court discharged the jury and entered convictions for second degree murder and criminal trespass.

During the sentencing hearing, all participants proceeded on the assumption that the trial court should sentence Ramirez for second degree murder—not second degree murder, heat of passion. The prosecutor argued that the jury "said this wasn't heat of passion, Judge. The jury said this was second-degree murder." The defense counsel agreed, arguing the "jury disagreed with the prosecution, that this was a murder that took place after deliberation. They certainly did consider the fact of heat of passion. They came back that it was second, that it was something not planned out, that it was not after deliberation." At the close of the sentencing hearing, the trial court found that there were extraordinary aggravating circumstances and sentenced Ramirez to forty-eight years in prison for the second degree murder conviction and three years for the first degree criminal trespass conviction to run concurrently with the second degree murder sentence.

Ramirez appealed to the court of appeals presenting two claims. First he asserted that the trial court violated his right to constitutional due process because it refused to give an instruction that evidence of his peaceful and law abiding character could support a finding of reasonable doubt; the court of appeals rejected this claim. Ramirez also argued that because the jury did not return a verdict on second degree murder—heat of passion, his case should be remanded with instructions to reduce his second degree murder conviction from the class two felony prescribed for second degree murder, section 18-3-103(3)(a), to the class three felony mandated for second degree murder—heat of passion, section 18-3-103(3)(b). The court of appeals agreed, holding that a jury's failure to complete the second degree murder—heat of passion verdict form required remand for resentencing. *People v. Ramirez*, No. 99CA164, slip op. at 3 (Colo.App. May 3, 2001). The court of appeals determined that if the trial court discharges the jury before it

5. § 18–3–103, 6 C.R.S. (2002).

6. § 18–4–502, 6 C.R.S. (2002).

obtains the jury's verdict concerning heat of passion, the level of the defendant's conviction must be reduced from the higher felony classification to the lower one. *Id.* at 3–4.

The prosecution sought certiorari from the decision of the court of appeals to this court arguing that the court of appeals erred in concluding that the jury's failure to mark the second degree murder—heat of passion verdict form constituted plain error because there was no evidence in the record to support a heat of passion instruction, let alone a verdict. We accepted certiorari.[7]

## II. Standard of Review

■ In this case, because neither party objected to the absence of a signature on the second degree murder—heat of passion verdict form, appellate review is limited to determining whether the error or defect constitutes plain error. *See, e.g., People v. Garcia,* 28 P.3d 340, 344 (Colo.2001); *People v. Dunlap,* 975 P.2d 723, 737 (Colo.1999). A plain error is one which deprives a litigant of fundamental rights. *People v. Gallegos,* 764 P.2d 76, 77 (Colo.1988); *People v. Rollins,* 892 P.2d 866, 874 n. 13 (Colo.1995). ("An accused may not withhold his objections until completion of his trial and after conviction, and later complain of matters which, if he had made a timely objection, would have allowed the trial court to take corrective action.")

■ When the standard of review is plain error, we will reverse a decision only if after reviewing the entire record, we "can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987); *see also Garcia,* 28 P.3d at 344.[8]

## III. Applicability of Heat of Passion Mitigator to Defendant

■ The prosecution argues that the jury's failure to mark the second degree murder—heat of passion verdict form could not have rendered the trial fundamentally unfair because the evidence could not support a second degree murder heat of passion verdict. We agree.

### A. The Statute

Section 18–3–103(3), the statute describing murder in the second degree and the heat of passion mitigator, provides:

(1) A person commits the crime of murder in the second degree if the person knowingly causes the death of a person.

. . . .

(3) (a) Except as otherwise provided in paragraph (b) of this subsection (3), murder in the second degree is a class 2 felony.

(b) Notwithstanding the provisions of paragraph (a) of this subsection (3), murder in the second degree is a class 3 felony where the act causing the death was performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person; but, if between the provocation and the killing there is an interval sufficient for the voice

7. Specifically, this court granted certiorari on the following:
1) Whether the court of appeals erred in concluding that the jury's failure to mark the verdict form for second degree murder—heat of passion constitutes plain error undermining the fundamental fairness of the defendant's trial when there was no evidence to support heat of passion.
2) In the alternative, if that failure constitutes plain error, whether the prosecution should have the option to retry the defendant on the charge of second degree murder.

8. We note that there is some confusion about whether the prosecution objected to the giving of heat of passion instructions. During the trial, the court and counsel briefly discussed jury instructions on the record. When the defense counsel indicated that he would submit an instruction as to heat of passion, the prosecutor indicated that he would probably argue against such an instruction. The court and counsel then reviewed the jury instructions off the record. In a subsequent discussion of jury instructions on the record, neither the court nor the parties mentioned the heat of passion instructions—either as contested or as uncontested. Because we review this case from the perspective of concerns about the unsigned jury verdict form, we attach no weight to the presence or absence of an objection by the prosecution.

of reason and humanity to be heard, the killing is a class 2 felony.

■ Ramirez correctly asserts that this court has recognized that the General Assembly added subsection (3)(b) to the second degree murder statute in 1996 intending the issue of provocation to be a mitigator to second degree murder that would reduce a charge of second degree murder from a class two felony to a class three felony, rather than intending second degree murder—heat of passion to be a separate offense. *People v. Garcia*, 28 P.3d 340, 345–46 (Colo.2001). Logically, as such, the prosecution does not bear the burden of proving adequate provocation beyond a reasonable doubt, but rather bears the burden of proving a lack of adequate provocation under subsection (3)(b). *Id.* at 346. Because provocation represents a mitigating factor, rather than a separate offense, as in *Garcia*, the instructions in this case inaccurately characterized second degree murder—heat of passion.

However, because in this case, the evidence was insufficient to support a jury finding of the heat of passion mitigator, neither the incorrect instruction nor the absence of a signature on the jury verdict form constitutes plain error.

### B. Insufficiency of the Evidence

For heat of passion to apply in this case, the victim's actions, taken in the light most favorable to the defendant, must have been "*serious and highly provoking act[s]* . . . affecting the defendant sufficiently to *excite an irresistible passion in a reasonable person*". § 18-3-103(3)(b) (emphasis added).

Ramirez relies on *People v. Harris*, 797 P.2d 816 (Colo.App.1990), for the assertion that where the legislature has treated provocation as a mitigator and the jury fails to make a finding as to whether heat of passion applies, the absence of such a finding must operate against the prosecution, and the defendant should be resentenced with the benefit of the heat of passion mitigator. In *Harris*, the jury found the defendant guilty of first degree assault with intent to commit serious bodily injury by means of a deadly weapon and a crime of violence. *Id.* at 817. The judge instructed the jury to make a

finding as to the applicability of the mitigation of heat of passion to the charge of first degree assault; however, the jury failed to complete a special verdict form indicating its finding on the issue and neither defendant, the trial court, nor the prosecution noticed the oversight prior to the discharge of the jury. *Id.* The court of appeals determined that a heat of passion defense "admits the doing of the act charged but seeks to mitigate it." *Id.* at 818. It instructed that once a defendant introduces some credible evidence that the defendant committed the crime "under a heat of passion, the burden shifts to the prosecution to demonstrate the non-existence of circumstances justifying the heat of passion defense." *Id.* The court determined that the defendant should be given the benefit of the heat of passion mitigator upon resentencing where the jury failed to make a finding as to that mitigator. *Id.*

However, *Harris* differs from the present case: the court of appeals in *Harris* acknowledged that a defendant must present some credible evidence that the crime was committed in the heat of passion. *Id.; see also People v. Suazo*, 867 P.2d 161, 168 (Colo.App. 1993) (finding that because defendant introduced credible evidence that the offense was committed under a heat of passion, the absence of a jury determination of provocation must operate against the prosecution).

■ Here, there is no such credible evidence. The victim's refusal of Ramirez's marriage proposal, request that Ramirez leave her home, and subsequent push toward the door when the defendant did not comply, do not, as a matter of law, fulfill the requirement that the victim's act be serious and highly provoking or sufficient to excite an irresistible urge in a reasonable person. Heat of passion is a legal theory that recognizes that sometimes circumstances conspire to cause even a reasonable person to react passionately and violently. Those circumstances do not exonerate the offender, but do mitigate the consequences of the violent acts. However, the refusal of a marriage proposal, and the request or even demand to leave one's home cannot under any construction

rise to the level of provocation that would justify a reasonable person in using violence.

We have previously reached similar conclusions. In *Coston v. People*, 633 P.2d 470, 472–73 (Colo.1981), this court held that (1) evidence of a defendant's long-standing, though illicit, sexual relationship with the victim, (2) his jealousy over her when she began another affair, and (3) her attempt to terminate their relationship, in combination, did not constitute adequate provocation to warrant a heat of passion mitigating instruction to reduce murder to manslaughter. Specifically, this court concluded that the victim's decision to "terminate her relationship with the defendant in this case does not amount to the sort of serious and highly provoking act which is sufficient to excite an irresistible passion in a reasonable person." *Id.* at 473.

Additionally, in *People v. Dooley*, 944 P.2d 590, 593 (Colo.App.1997), the court of appeals held that the defendant failed at a minimum to establish any evidence that the victim's acts were sufficient to excite an irresistible passion in a reasonable person sufficient to justify a heat of passion instruction. The defendant and the victim involved were engaged in an intermittently romantic relationship over a one-year period, as the victim spent most of the year moving back and forth between the defendant's household and that of her husband, despite the defendant's displeasure at the situation. *Id.* at 592. The victim then acquired a separate apartment; during the defendant's visit, the victim denied the defendant's request to come and sit by him, stating that she did "not want to be his whore anymore." *Id.* at 593. She then walked into the kitchen and sat down at a typewriter; the defendant followed her into the kitchen, ripped the paper out of the typewriter, and then stabbed the victim thirty-three times, killing her. *Id.*

Courts across the country examining the issue have also generally concluded that a victim's rejection of the defendant's affections is not sufficient to constitute a highly provoking act that would excite an irresistible urge in a reasonable person. *See, e.g., State v. Haque*, 726 A.2d 205, 209 (Me.1999) (holding that a victim's concurrent refusal to marry the defendant, her desire to terminate their relationship, and her statement that "we [are] just too different," did not constitute a legally adequate provocation as a matter of law and, therefore, did not generate a defense of adequate provocation); *Turben v. State*, 726 N.E.2d 1245, 1248 (Ind.2000) (determining that the combination of the defendant's stormy marriage, an argument between the defendant and the victim on the night of the murder, the victim's statement that she was obtaining a divorce, the victim's throwing a baby bottle at the defendant, and the defendant's "explosive mood disorder" did not inflame sudden heat sufficient to mitigate murder to voluntary manslaughter); *State v. Arnold*, 706 So.2d 578, 581, 584 (La.Ct.App.1998) (determining that heat of passion did not exist where the defendant's girlfriend had visited another man, the girlfriend's sister was arguing with the defendant, and the girlfriend's brother requested that the defendant leave the residence and grabbed defendant's arm); *State v. Pulsifer*, 724 A.2d 1234, 1239 (Me.1999) (deciding the trial court correctly rejected defendant's adequate provocation defense where the defendant claimed extreme anger and fear resulting from the efforts of others to interfere with his romantic relationship because those acts "would not cause a reasonable man to stab the woman who is the object of his affection"); *State v. Locklair*, 341 S.C. 352, 535 S.E.2d 420, 422, 424–25 (2000) (holding that evidence that the victim, defendant's ex-girlfriend, refused defendant's pleas to get back together with him, and that the victim's mother threw a cigarette case at defendant immediately before he shot the victim was not sufficient to constitute legal provocation); *Gaston v. State*, 930 S.W.2d 222, 225–26 (Tex. Ct.App.1996) (concluding that defendant's wife's nagging, taunting, and promising a divorce and property squabble did not provide the necessary evidence of provocation to support a voluntary manslaughter instruction); *Commonwealth v. Brown*, 387 Mass. 220, 439 N.E.2d 296, 301 (1982) (noting that where the defendant's wife choked defendant with his shirt and supposedly admitted to suspected adulterous acts claiming that she could do what she wanted with her vagina, the facts did not rise to the level of a "sudden

provocation" sufficient to reduce murder to manslaughter); *Washington v. State,* 989 P.2d 960, 966, 968 (Okla.Crim.App.1999) (indicating that the victim's proclamation that she no longer loved the defendant and that she wanted nothing to do with him was insufficient to constitute adequate provocation to justify a first degree heat of passion manslaughter instruction).

### IV. Conclusion

The victim's acts here were not sufficiently provocative to support a heat of passion instruction or verdict. The victim's refusal of Ramirez's marriage proposal, her request that Ramirez leave her home, and her action in pushing him toward the door when he did not comply are not serious and highly provoking acts that would excite an irresistible urge in a reasonable person. The absence of reciprocal feelings cannot justify inexcusable acts of violence. Therefore, we hold that the jury's failure to sign the second degree murder—heat of passion jury verdict form did not constitute plain error.[9] We reverse the court of appeals' judgment and remand this case for issuance of a mandate upholding the trial court sentencing order.

---

**9.** Because we answer the first question presented to us on certiorari in the affirmative we need not reach the second issue on which we granted certiorari.